DANIEL DOONAN et al., Respondents, *v.* THOMAS KILLILEA et al., Appellants

**Real property — deed — covenants against incumbrances — New York (city of) — assessments for local improvements not liens upon real property until ten days after the assessments are entered in the record kept in office of the collector of assessments and arrears.**

1. The provision of the Real Property Law (Cons. Laws, ch. 50, § 253, subd. 3) defining a covenant against incumbrances upon land conveyed has reference, not to inchoate assessments or other charges, but to legal liens fully matured. The covenant operates *in præsenti* and is broken the instant it is made, if an incumbrance exists, but unless an assessment is then an actual lien the covenant is not broken.

2. Under the provisions of the Greater New York charter relating to assessments for local improvements and the levying of the tax therefor (L. 1901, ch. 466, §§ 986, 1004, 1017, 1027) assessments for a local improvement are not due and a lien upon any property included in the assessment district until ten days after they are entered in the record kept in the office of the collector of assessments and arrears.

3. Where property within an assessment district was conveyed by a deed made after the assessment was confirmed but before ten days had expired after it was entered in the record of the collector of assessments and arrears, such assessment is not a lien upon the premises conveyed. (*Real Estate Corporation of New York City* v. *Harper*, 174 N. Y. 123, followed; *De Peyster* v. *Murphy*, 66 N. Y. 622, overruled.)

*Doonan* v. *Killilea*, 170 App. Div. 954, reversed.

(Argued January 17, 1918; decided February 5, 1918.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered October 28, 1915, affirming a judgment in favor of plaintiffs entered upon an order of Special Term overruling a demurrer to the complaint and directing judgment for the relief demanded therein.

The nature of the action and the facts, so far as material, are stated in the opinion

*Philip S. Dean* and *Hector McG. Curren* for appellants. The assessment in question did not become a lien, charge or incumbrance until after the delivery of the deed. (*Real Estate Corporation* v. *Harper*, 174 N. Y. 123.)

*John J. Cunnen* and *William P. Mulry* for respondents. At the time of the conveyance the premises were incumbered by an assessment. (*Dolan* v. *Mayor, etc.,* 62 N. Y. 472; *Mayer* v. *Mayor, etc.,* 101 N. Y. 284; *Fischer* v. *Mayor, etc.,* 67 N. Y. 72; *Darling* v. *Rogers,* 22 Wend. 483; *De Peyster* v. *Murphy,* 66 N. Y. 622; *Cuba* v. *Druskin,* 135 App. Div. 508; 202 N. Y. 560; *Green* v. *Tedball,* 26 Wash. 338; *Lafferty* v. *Milligan,* 165 Penn. St. 534; *Blackie* v. *Hudson,* 117 Mass. 181.) An assessment confirmed by the Supreme Court should be held to be an " assessment " and " charge " within the meaning of the covenant free and clear of all incumbrances. (*De Peyster* v. *Murphy,* 66 N. Y. 622; *Harper* v. *Dowdney,* 113 N. Y. 644; *McLaughlin* v. *Miller,* 124 N. Y. 510; *Hastings* v. *Improvement Co.,* 46 App. Div. 609; *Cuba* v. *Druskin,* 135 App. Div. 508; *Matter of Grifenhagen* v. *Ordway,* 218 N. Y. 451.)

CUDDEBACK, J. By the complaint, which was sustained on demurrer, the plaintiffs seek to recover for the breach of a covenant against incumbrances contained in a deed made and delivered to them by the defendants. Prior to the time of the delivery of the deed proceedings

had been instituted by the city of New York to acquire title to a street opened in the neighborhood of the land conveyed, which resulted, among other things, in the assessment complained of on the lands described in the deed. The assessment was confirmed by an order of the court on December 16, 1912. It was entered as required by the city charter in the record of assessments confirmed kept in the office of the collector of assessments and arrears on April 11, 1913. The plaintiffs' deed was made April 15, 1913.

The plaintiffs paid the assessment and bring this action to recover the amount thereof, on the ground that the assessment constituted a breach of the covenant against incumbrances in the defendants' deed within section 253 of the Real Property Law (Cons. Laws, ch. 50).

Section 253 of the Real Property Law says that the covenant against incumbrances means that the lands conveyed " are free, clear, discharged and unincumbered of and from all former and other gifts, grants, titles, charges, estates, judgments, taxes, assessments, liens and incumbrances, of what nature or kind soever." (Subd. 3.)

*Lathers* v. *Keogh* (109 N. Y. 583) and *Real Estate Corporation of N. Y. City* v. *Harper* (174 N. Y. 123) are authority for the statement that section 253 of the Real Property Law has reference not to inchoate assessments or other charges, but to legal liens fully matured. The covenant against incumbrances operates *in præsenti* and is broken the instant it is made if an incumbrance exists, but unless the assessment is then an actual lien, the covenant is not broken.

The question, therefore, is, When did the assessment in the present case become a lien? The answer depends upon a reading of certain sections of the city charter.

Section 1004 of the charter provides that the local assessments reported by the commissioner of assessments

" shall be a lien or charge on the lands " mentioned in the commissioner's report, and that the owners of such lands shall " be respectively liable to pay on demand the respective sum or sums " mentioned in the report, and that the assessments may be recovered with all costs and charges by the city from the owner of the lands assessed.

Section 986 provides for the confirmation of the commissioner's report by the court, and says that the report, when so confirmed, shall be final and conclusive on the city, and on the owners of the lands mentioned in the report, and on all other persons whomsoever. The plaintiffs insist that under these sections of the charter the assessment became a lien on December 16, 1912, when the order of confirmation was made, and prior to the delivery of the deed.

Section 1017 of the charter provides as follows: " No assessments for any local improvements shall be deemed to be *fully confirmed,* so as to be due and be a lien upon the property included in the assessment, until ten days after the title thereof, with the date of confirmation shall be entered with the date of such entry, in a record of the titles of assessments confirmed, to be kept in the office of the collector of assessments and arrears."

Obviously, these sections of the charter (§§ 986, 1004 and 1017) must all be construed together. Section 1004 provides for the lien of the assessments and defines the nature and extent thereof, and section 1017 prescribes the time when they shall become of force.

Thus assessments for local improvements are made liens at the same time in the course of the assessment proceedings that under section 159 all other assessments made under the charter become liens, viz., ten days after they are entered in the record kept in the office of the collector of assessments and arrears. The assessments are then to be regarded as complete and open

for public inspection and the record of the same becomes presumptive evidence of the facts therein contained. (§ 159.)

This view is sustained by section 1027 of the charter, which fixes the time when the city may proceed and enforce the assessment if it is not paid. Section 1027 says that the city may sell the " tax lien " whenever any assessment on lands for local improvements " shall remain unpaid for the term of three years from the time the same shall have been *fully confirmed.*" Local assessments are not " fully confirmed " under section 1017 until they are entered in the collector's record.

I think it is the general rule that the time when taxes and assessments on lands become due and payable and are made liens on the land assessed is fixed with reference to the time that the tax or assessment rolls are delivered to the collector and public notice of the receipt thereof is given.

This construction of the New York charter provisions, viz., that assessments become liens on the lands assessed ten days after the assessments are entered in the record kept in the collector's office, is strictly in line with the decision in this court in *Real Estate Corporation of N. Y. City* v. *Harper (supra).* In that case the court said, with respect to these same sections of the charter: " So important a question, as when an assessment becomes a lien, should not be open to doubt, but should be so certain that even the unlearned can tell by the simple examination of a record in a public office. Owing to the importance of the subject to conveyancers and to the public generally, the legislature, as we think, took care to provide a definite time when an assessment should become a lien and an easy method of ascertaining it." (p. 130.)

So far as the opinion in *De Peyster* v. *Murphy* (66 N. Y. 622), on which the plaintiffs rely, states a different rule, it must yield to the later decision in the *Harper* case.

The judgments should be reversed and judgment rendered for defendants on demurrer, with costs in all courts.

HISCOCK, Ch. J., CHASE, COLLIN, HOGAN and Mc-LAUGHLIN, JJ., concur; CRANE, J., not sitting.

Judgments reversed, etc.