In the Matter of the Estate of M. MANDANA MEAD, Deceased.

Surrogate's Court, Niagara County, December 31, 1928.

---

* Affd.. sub nom. Solomon *v.* State Tax Commission. 278 U. S. 484.

*Judson, Holley & Andrews,* for the executor Bateman.

*Hopkins, Brim & Hopkins,* for the executor Greene.

*Fred D. Moyer,* for the claimant McClay.

GOLD, S. The decedent died on or about the 5th day of February, 1926, and at the time of her death was the owner of a farm located in the town of Somerset in Niagara county. The executors of the will, under power of sale therein, sold the farm at public auction to one Edith B. Greene. Prior to the delivery of a deed, said Edith B. Greene assigned her purchase to Dewey T. McClay and an executors' deed of the farm was delivered direct to McClay.

The announced terms of sale contained, among other provisions, the following, to wit: " 3. All taxes, liens and encumbrances on said premises will be discharged by the Executors prior to the date of the delivery of the said Deed, except the right of the tenant in the growing wheat."

In the year 1924 the town of Somerset, in which the farm lies, duly created a water supply district which included part of the farm, under section 281 *et seq.* of the Town Law.

Section 281 of the Town Law (as amd. by Laws of 1926, chaps. 376 and 377) provides that the town board may establish such water supply district and contract for a water supply therefor " and the whole town shall be bound by such contract, but the rental or expense thereof shall annually, in the same manner as other expenses of the town are raised, be assessed, levied upon and collected only from the taxable property within such water supply district."

Section 288 (as amd. by Laws of 1927, chap. 648) authorizes the issuing of town bonds to pay for the system, which " shall be a charge upon the town and shall be collected from the real property within the water district, or in case of enlargement of such water district from the real property within such enlargement."

Section 289 provides that " the water commissioner shall annually apportion the amount to be raised for the payment of the principal and interest of the bonds upon the taxable property in the water district as the same appears on the assessment-roll and present a statement thereof to the town board," etc.

The town board shall transmit that statement to the board of supervisors. "The board of supervisors shall levy such sums against the property liable and shall state the amount of the tax in a separate column in the annual tax-roll under the name of 'water tax.'"

Pursuant to the above the town issued and sold thirteen bonds of $1,000 each and interest to pay for said water system, due one each year beginning April 1, 1928, maturing yearly thereafter.

Said McClay has presented a claim against this estate for the sum of $1,225.50, claiming that the estate should pay the bonds which mature subsequent to the date of the sale and that the same are liens and incumbrances as contemplated by the clause above referred to as contained in the terms of sale.

The town clerk testified that there were other town bonds outstanding for other purposes, which from year to year run into the tax levy, but no one could tell what proportion thereof this farm would have to pay until the board of supervisors levied the tax and signed the tax warrant for each year.

Claimant apparently considers the said bonds in the same classification as assessments for local improvements. I do not so find. In determining this matter this court is confined to the words set forth in the terms of sale. The express words used in the terms of sale are *taxes, liens* and *incumbrances.*

The unmatured bonds do not come within the above classification. (*Doonan* v. *Killilea*, 222 N. Y. 399.)

"Until the amount of the tax is ascertained and determined no lien or incumbrance exists by reason thereof, and we think that the proper construction of this covenant merely calls for the freedom of the property, at the time of conveyance, from what can be considered an incumbrance upon the property; not freedom from some undetermined matter which may ripen into a charge, imposed as a lien by law, but freedom from a visible and ascertained incumbrance." (*Lathers* v. *Keogh*, 109 N. Y. 583, 588.)

At the time the purchaser took title to the farm all water taxes levied to that date had been paid by the estate. No subsequent tax had been fixed or determined, nor could the same be.

Practically every municipality and other political subdivision borrow money for general improvements for the payment of which bonds are issued payable at future dates. Certainly these bonds would not be liens against the property of the municipality or political subdivision until the same would mature and be placed in the general assessment roll for collection during the year of maturity.

The claim of the claimant is without force and without any legal basis and is, therefore, not allowed.